FILED
2021 Jul-09  PM 02:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RAYMOND WADE,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **Case No.:** |
| | ) | |
| **TRICON WEAR SOLUTIONS,** | ) | |
| **LLC.** | ) | **JURY DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

COMES NOW Plaintiff, Raymond Wade (hereinafter "Plaintiff" or "Mr. Wade"), who hereby files this action against Tricon Wear Solutions, LLC (hereinafter "TWS" or "Defendant") pursuant to the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. §621 et. seq. ("ADEA") and the Alabama Age Discrimination and Employment Act. Alabama Code §§ 25-1-20 (1975) et. seq. Mr. Wade pleads the following:

## JURISDICTION AND VENUE

1.      Jurisdiction of this matter arises under 28 U.S.C. §§ 1331 and 1343(4) with federal questions involving the Age Discrimination in Employment Act. 29 U.S.C.§ 621 *et. seq.* ("ADEA").

1

2.     An express grant of federal court jurisdiction over these federal claims is found in the ADEA at 29 U.S.C. §626.

3.     Pursuant to 28 U.S.C.§1367, this Court has supplemental jurisdiction over Mr. Wade's state law claims concerning Alabama Code §§ 25-1-20 (1975) *et. seq.*

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 since all, or at least a substantial part of the events giving rise to Mr. Wade's claims occurred in and around Jefferson County, Alabama.

## PARTIES

5.     Mr. Wade is an individual resident of Odenville, Alabama.

6.     Defendant TWS is a foreign limited liability company from Delaware and it is registered as entity identification number 357-156 with Alabama's secretary of State.

7.     TWS is one of the nation's largest suppliers of proprietary abrasion-resistant plate, alloy shafting, and custom fabrications and one of its three main locations is its Irondale, Alabama, facility.

8.     TWS conducts business in and around the state of Alabama (including Jefferson County) and the United States.

9.     TWS's principal address is located in Irondale, Alabama, at 2700 5th

Avenue S, Irondale, Alabama 35210, and the events giving rise to this action occurred there.

10.     At all relevant times, Mr. Wade was TWS's A-Class Fitter/Welder at its Irondale, Alabama, location.

11.     At all relevant times stated herein, TWS was Mr. Wade's employer within the meaning of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq. ("ADEA").

12.     At all relevant times, Mr. Wade was an employee within the meaning of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq. ("ADEA").

13.     At all relevant times stated herein, TWS was Mr. Wade's employer within the meaning of the Alabama Age Discrimination in Employment Act, Alabama Code §§ 25-1-20 (1975) *et. seq* (AADEA).

14.     At all relevant times, Mr. Wade was an employee within the meaning of the Alabama's Age Discrimination in Employment Act, Alabama Code §§ 25-1-20 (1975) *et. seq* (AADEA*).*

## PREREQUISITE TO SUIT

15.     Mr. Wade has met the statutory prerequisites to the filing of an ADEA complaint in federal court.

16.     Mr. Wade filed the initial complaint with the EEOC within 180 days of

him being unlawfully terminated. The Defendant unlawfully terminated Mr. Wade due to his age on March 23, 2020.

17.     Mr. Wade filed a Charge of Discrimination (420-2020-02417) with the EEOC's 180 day window on June 30, 2020, only 99 days later. *See,* 29 U.S.C. § 626(d)(1)(A).  **(Exh. A, pp. 1-3).**

18.     Mr. Wade filed this Complaint within 90 days of receiving Dismissal and Notice of Suit Rights from the EEOC dated April 9, 2021, mailed on April 12, 2021, and received on April 13, 2021. (**Exh. A, p. 4).**

## FACTUAL ALLEGATIONS

19.     Raymond Wade is now a 60-year-old male and at all times relevant to this cause of action he was fifty-nine (59) years old when the events plead below occurred.

20.     Mr. Wade worked for Defendant TWS from on or about November 2006 and worked for TWS until her was terminated on March 23, 2020.

21.     As outlined below, Mr. Wade was terminated by Defendant on March 23, 2020 after he engaged in the protected activity of complaining the age discrimination he endured as TWS's employee.

22.     At all times TWS made it known that it knew of Mr. Wade's age, sixty (60).

23.     TWS's managers mocked Mr. Wade by making fun of him because he was TWS's eldest A-Class Fitter/Welder.

24.     From November 2006-March 23, 2020, Mr. Wade worked full-time as Defendant's Fitter/Welder/Fabricator at its Irondale, Alabama, location.

25.     Mr. Wade maintained an exemplary record as TWS's A-Class Fitter/Welder A-Class fitter-welder during his 14+ years of employment with TWS.

26.     Mr. Wade routinely worked forty (40) hours per week and overtime when TWS asked him to do so.

27.     Mr. Wade's regular pay rate was $24.70 per hour when he was terminated.

28.     Upon information and belief, TWS's management staff knew better than to mention age as the reason for terminating older employees.

29.     However, it was well known by Mr. Wade and TWS's older employees that TWS used age as a reason for replacing its older employees with younger, less qualified comparators.

30.     Mr. Wade met all of his  responsibilities as TWS's Senior A-Class Fitter/Welder.

31.     During his tenure, Mr. Wade was consistently rated a top performer who worked hours of overtime in order to assist the production goals set by TWS's

management staff.

32.    Starting in 2019, TWS made it a common practice to have its older senior employees train their younger comparators as replacements before they were ultimately terminated.

33.    In Mr. Wade's experience, the training period was largely unknown to the older employees until they were terminated.

34.    Throughout his employment and as a result of his age, Mr. Wade was subjected to false disciplines, heightened scrutiny, and denied the same employee rights as his younger comparators working with and below me.

35.    Starting at the end of 2019 and continuing through his termination on March 23, 2020, TWS implemented a policy and practice of replacing its older and more senior employees with younger comparators with less seniority and experience.

36.    Starting in January 2020 TWS's management started making fun of Mr. Wade's age and speed.

37.    In addition to the comments, TWS started in 2020 to subject Mr. Wade to fake evaluations and tests in an attempt to record any corrections that might be needed for his work.

38.    However, when TWS subjected him to the false tests and scrutiny as compared to his younger comparators, the quality of Mr. Wade's work outclassed his

6

younger comparators in the sense he rarely had to correct the fitter-welder work he performed.

39.     On or about the end of January 2020, Mr. Wade learned he might be replaced with a younger, less qualified comparator who TWS required him to train.

40.     After hearing this, Mr. Wade spoke directly to TWS's management about his wish to continue employment and that he feared he was going to be replaced by a younger, less senior employee he was required to train.

41.     TWS's managers would blow off his questions and did not respond.

42.     After Mr. Wade spoke to TWS's managers, he learned from his supervisor before he was fired that the company was seeking to force him out of his position because it wanted a younger, cheaper perspective.

43.     Following his discussions with management, a co-worker told Mr. Wade that his job may be at risk.

44.     Starting in February 2020 and continuing until his termination on March 23, 2020, TWS began revoking certain conditions and benefits of my employment based solely on Mr. Wade's age.

45.     Mr. Wade first recognized this issue in February when TWS assigned two newly hired younger welders for him to oversee and train.

46.     In addition to his duties as a fitter/welder/fabricator, he  also trained the

two younger welders assigned to his department for TWS until he was terminated.

47.     Prior to his termination, Mr. Wade saw the company terminating older employees who, at the same time, had trained their younger replacements.

48.     In response, Mr. Wade started complaining orally to TWS's management about older employees being pushed out of their jobs and replaced by the younger employees TWS required them to train.

49.     Mr. Wade complained and spoke to management about its decisions to terminate TWS's really good A-Class Fitter/Welder's solely due to their age.

50.     Before he was terminated and told to leave, Mr. Wade complained directly to Bobby McDaniel and Jay Byars about the company terminating him and others due to his age.

51.     Despite this, Mr. Wade was not allowed to engage in the interactive process concerning TWS's alleged reasons for his termination.

52.     Instead, after 14+ years of service as TWS's loyal employee, Mr. Wade was instructed by TWS's managers, Bobby McDaniel and Jay Byars  to grab his tools and leave.

53.     Per company policy and procedures, employees were required to sign any disciplinary reports and/or write-ups they received.

54.     Prior to being terminated, Mr. Wade had not been written up in several

years and he had not signed any write-ups or disciplinary reports concerning any violation of company policy or procedure.

55.     Prior to being terminated, Mr. Wade had not abused the use of any job benefits or leave allowed.

56.     On March 23, 2021, TWS terminated Mr. Wade and gave him a letter which claimed TWS was eliminating his A-Class Fitter/Welder position due to concerns with COVID-19 and a possible reduction in force.

57.     During his termination, TWS told Mr. Wade he was being terminated really because he was older and it stated the termination was because his age made him more "susceptible" to contracting COVID-19.

58.     When Mr. Wade was terminated on March 23, 2020, he was fit and able to perform all necessary duties of his job as TWS's senior fitter-welder.

59.      No reduction in force occurred around the time Mr. Wade was terminated.

60.     Before and After Mr. Wade was termination, TWS ran an advertisement seeking fitter-welders to apply for his position at its Irondale (Birmingham), Alabama. (**Exh. B, pp. 1-2).**

61.      No reduction in force at the Irondale location has occurred since, as is evidenced by TWS openly continuing to seek fitter-welders to fill positions at its

Irondale (Birmingham), Alabama facility. **(Exh. C, pp. 1-2).**

62.    Prior to his termination, Mr. Wade had not been reprimanded for violating any company policy which warranted termination without the benefit of TWS's progressive disciplinary policy.

63.    Prior to his termination, Mr. Wade had not been reprimanded for any performance violation which warranted termination without the benefit of TWS's progressive disciplinary policy.

64.    Prior to terminating Mr. Wade, TWS never issued any employee reprimand(s), write-up(s), coaching(s), or verbal warning(s) concerning Mr. Wade's job performance as its full time A-Class Fitter/Welder.

65.    TWS terminated Mr. Wade solely due to his age fifty-nine (59) in order for TWS to hire his younger replacement.

66.    On the day of his termination, Mr. Wade also ask TWS managers to engage in the interactive process with him and he requested ongoing employment.

67.    On March 23, 2020, TWS's managers denied Mr. Wade such request.

68.    TWS's practice was discriminatory on its face because the practice was not justified by any reason other than Mr. Wade's age.

69.    Upon information and belief, TWS was making a profit due to his large orders as of March 23, 2020.

70.     On March 23, 2020, Mr. Wade was terminated along with several of his fellow co-workers who were also over the age of forty (40).

71.     TWS had no legitimate business reason to terminate Mr. Wade.

72.     In the weeks prior to his termination, TWS's managers had made Mr. Wade and his co-workers aware of the large incoming production orders and production goals which were required for March 2020.

73.     Due to the large incoming production orders and goals set by TWS's management staff in March 2020, TWS was not anticipating and/or planning for a reduction in force.

74.     At the time of Mr. Wade's termination, TWS was seeking new employees as TWS's ad reflects.

75.     TWS's termination of Mr. Wade was not based on a reduction in force and his position was not terminated.

76.     Mr. Wade's termination was in close proximity to the complaints he submitted to TWS about its unlawful treatment of older workers.

77.     Upon information and belief, TWS discriminated against Mr. Wade because of his age with respect to employment terms, conditions, privileges of employment, including hiring, firing, promotion, layoff, compensation, benefits, job assignments, and training.

11

78.     Based on the foregoing facts, Mr. Wade believes his job assignments, layoff, training, and  termination were based solely on his age as well as engaging in protected activity under the law.

79.     At all relevant times, TWS maintained an "Equal Opportunity" policy which it outlined in its employee handbook.

80.     TWS failed to abide by its "Equal Opportunity" policy in terminating Mr. Wade without cause and filling his  position with a younger, less experienced employee.

81.     At all relevant times, TWS maintained a policy concerning reporting, retaliation, and investigations of harassment and discrimination which was outlined in its employee handbook.

82.     Mr. Wade's younger comparators received the benefit of TWS's policy concerning reporting, retaliation, and investigations of harassment and discrimination, but he was not given the same treatment.

83.     At all relevant times, TWS maintained a progressive discipline process that was outlined in its employee handbook.

84.     Mr. Wade's younger comparators were disciplined in accordance with TWS's progressive disciplinary policy by warnings, coachings, write-ups, etc.

85.     However, TWS did not provide Mr. Wade the same opportunity and/or

protections which it afforded to his younger comparators.

86.     As such, Mr. Wade was treated differently than his younger comparators solely due to his age.

87.     TWS never investigated Mr. Wade's concerns and/or complaints about being replaced by a younger, less qualified, employee.

88.     TWS knowingly, willfully, and with reckless disregard, terminated Mr. Wade's employment on March 23, 2020 due to his age.

89.     TWS did not act in reliance upon any of the following in terminating Mr. Wade: (a) case law; (b) the ADEA, 29 U.S.C. § 621 et. seq.; (c) Department of Labor Wage & Hour Opinion Letters; or (d) the Code of Federal Regulations; or (e) the Alabama Age Discrimination In Employment Act as defined by the Alabama Code §§ 25-1-20 (1975) et. seq. when it made its decision to terminate Mr. Wade.

## <u>COUNT I</u>
## Defendant's Violations of the Age Discrimination In Employment Act
## (29 U.S.C. § 621 et. seq. ("ADEA"))

Mr. Wade incorporates by reference the previous paragraphs 1-89 above and makes them a part hereof.

90.     At all relevant times, Mr. Wade was a member of a protected class because he was over the age of forty (40) and the events given rise to this action occurred when Mr. Wade was fifty-nine (59).

13

91.    At all relevant times, TWS knew of Mr. Wade's age and his complaints of age discrimination.

92.    The ADEA makes it unlawful:

> (1)    to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
> (2)    to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
> (3)    to reduce the wage rate of any employee in order to comply with this Act.

29 U.S.C. § 623

93.    While Rule 8 only requires that Mr. Wade "plausibly suggest" intentional age discrimination at the complaint stage, *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 641 (11th Cir. 2018), Mr. Wade may establish a prima facie case of age discrimination by showing:

> (1)    that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position that he sought or from which he was discharged; and (4) that he was qualified to do the job for which he was rejected. *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998) *citing O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996).

94.    TWS both intentionally and willfully engaged in illegal age

14

discrimination against Mr. Wade.

95.    TWS terminated Mr. Wade who, at fifty-nine (59) years old, was in a protected class under the ADEA.

96.    Mr. Wade suffered an adverse employment action when he was unlawfully terminated by Defendant and when he was denied privileges and conditions of employment which TWS afforded to his younger comparators.

97.    Defendant replaced Mr. Wade with someone "substantially younger" than he was.

98.    Mr. Wade had shown after almost fifteen (15) years of service that he was well qualified for his position. During his tenure, Mr. Wade had never received any reprimands or write-ups for violating company policy and/or procedure during that time which warranted suspension and/or immediate termination.

99.    By the point of his termination, Mr. Wade had risen to the level of shop steward for TWS.

100.    During his tenure, Mr. Wade did occasionally receive write-ups for measurement corrections which was reasonably under the circumstances cause his job was a fabrication based job and corrections of dimensions, construction, and weld were common in the industry. None of the write-ups for corrections for violating company policy and/or procedure during that time which warranted suspension and/or

immediate termination.

101.    Because Mr. Wade was classed on the basis of his age, he was denied the procedures outlined in the employee handbook which entails several steps between any alleged deficient performance and termination. Defendant summarily terminated Mr. Wade, denying him the benefit of process available to all other employees. *Se*e 29 U.S.C. § 623(2).

102.    Mr. Wade's termination was pre-text for age discrimination with respect to his employment terms, conditions, privilege of employment, firing, compensation, benefits, job assignments, and training.

103.    Mr. Wade was told by his supervisor that his firing was due TWS's desire for a "younger perspective" and management asked Mr. Wade if he knew any young pipe fitter/welders TWS could hire,  thus demonstrating the casual link between Mr. Wade's age and the TWS's decision to terminate him.

104.    TWS established in its termination letter to Mr. Wade that its decision to terminate Mr. Wade was due to his age.

105.    Prior to being terminated, Mr. Wade had not requested leave and/or abused any leave privileges earned during his employment with TWS.

106.    The Defendant's assurance that Mr. Wade was in no danger of losing his job further shows that there was no legitimate business reason for the termination.

16

Thus, Defendant gave so-called justifications made after the fact only served to mask the Defendant's discriminatory purpose.

107.    The peculiar reasons put forth by Defendant in its termination letter to Mr. Wade were not the reasons for his termination.

108.    If Mr. Wade had any record had infractions in his file, such in should have been handled per the disciplinary procedures outlined in the handbook which do not allow for immediate termination for minor mistakes or reasonable mistakes in the industry.

109.    Mr. Wade suffered multiple adverse actions as a result of TWS's age discrimination towards him including demotions, false scrutiny, termination, and TWS's failure to rehire Mr. Wade.

110.    The denial of these procedures was due solely to Mr. Wade's age because his younger comparators were given the benefit of TWS's policies and procedures.

111.    Accordingly, Mr. Wade avers that the Defendant's conduct violates the ADEA's ban against age discrimination because his termination was based on his age.

## <u>COUNT II</u>
### Retaliation Under The Age Discrimination In Employment Act
### (29 U.S.C. § 621 et. seq. ("ADEA"))

Mr. Wade incorporates by reference the previous paragraphs 1-89 above and makes them a part hereof.

112.   At all relevant times, Mr. Wade was a member of a protected class because he was over the age of forty (40) and the events given rise to this action occurred when Mr. Wade was fifty-nine (59).

113.   At all relevant times, TWS knew of Mr. Wade's age and his complaints of age discrimination.

114.   Mr. Wade engaged in protected activity under 29 U.S.C. § 621 et. Seq. when he confronted TWS's management about the possibility of losing his job to a younger employee.

115.   TWS's managers never responded to Mr. Wade about the complaints he made about his fear of being terminated due to his age.

116.   TWS did not tell Mr. Wade that he was suffering from any deficiencies that might lead to him termination or otherwise provide any reprimands and he did not sign any write-ups

117.   Nevertheless, TWS terminated Mr. Wade following his complaint about rumors that he would be fired and replaced with a younger employee.

118.   Because, according to TWS, Mr. Wade was not at risk of losing his job when he inquired into his employment status, the subsequent termination was retaliation for Mr. Wade having engaged in protected activity.

119.   TWS's retaliatory, coercive, oppressive, and other adverse actions

against Mr. Wade were caused by his complaints of age discrimination, as well as requesting additional information about TWS's alleged desire to replace him with a younger employee. Such actions are protected activity under the ADEA.

120.    TWS further engaged in retaliatory, coercive, oppressive, and other adverse actions against Mr. Wade because he opposed TWS's illegal conduct including, but not limited to, denying Mr. Wade information related to his discriminatory scheme about terminating employees based on their age, terminating him due to his age, as well as its refusal to reinstate him upon termination.

121.    TWS's actions were connected to Mr. Wade's engaging in protected activity and his opposition to TWS's illegal conduct.

122.    Resulting from TWS's actions, Mr. Wade has suffered extreme harm, including, but not limited to, loss of employment opportunities, denial of wages, compensation and other benefits and privileges of employment.

123.    Mr. Wade has suffered and suffers irreparable harm and injury, including pain, humiliation, anxiety, loss of employment, and mental anguish.

124.    Mr. Wade suffered multiple adverse actions as a result of TWS's retaliation which occurred in close proximity to him  engaging in protected activity.

125.    The adverse actions TWS forced Mr. Wade to endure after engaging in protected activity include but are not limited to the following: TWS required Mr.

Wade train his younger replacement; TWS demoted Mr. Wade in terms and conditions of his job duties prior to his termination; TWS subjected Mr. Wade to false scrutiny in close proximity to his termination; TWS terminated Mr. Wade in close proximity to him engaging in protected activity by complaining about TWS's unlawful practices; TWS's failed to rehire Mr. Wade upon termination; and TWS placed an ad for Mr. Wade's position prior to terminating him; and TWS replaced Mr. Wade's fitter-welder position with a younger, less qualified person.

126. At all relevant times, TWS knowingly, willfully, and recklessly denied and retaliated against Mr. Wade for exercising his rights under the ADEA. Notably, the procedures outlined in the employee handbook were eerily similar to those outlined in the ADEA.

<b><u>COUNT III</u><br>Violation of the Alabama Age Discrimination In Employment Act<br>(Alabama Code §§ 25-1-20 (1975) et. seq.)</b>

Mr. Wade incorporates by reference the previous paragraphs 1-111 above and makes them a part hereof.

127. At all relevant times, Mr. Wade was a member of a protected class because he was over the age of forty (40) and the events given rise to this action occurred when Mr. Wade was fifty-nine (59).

128. At all relevant times, TWS knew of Mr. Wade's age and his complaints

of age discrimination.

129.    The Alabama Age Discrimination in Employment Act ("AADEA") states that "[n]o employer, employment agency, or labor organization shall discriminate in employment against a worker 40 years of age and over in hiring, job retention, compensation, or other terms or conditions of employment." Ala. Code § 25-1-21 (1975).

130.    The similarities between the AADEA and the ADEA have led Alabama courts to adopt the same burden shifting analysis set forth above for federal age discrimination claims. *Lambert v. Mazer Disc. Home Ctrs., Inc.*, 33 So. 3d 18, 23 (Ala. Civ. App. 2009):

> federal courts have applied to AADEA claims the same evidentiary framework applied to federal age-discrimination claims. We agree that this framework, which was articulated by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), is the proper means by which to review an AADEA claim *Robinson v. Ala. Cent. Credit Union*, 964 So. 2d 1225, 1228 (Ala. 2007)

131.    Mr. Wade suffered multiple adverse actions as a result of TWS's age discrimination towards him including demotions, false scrutiny, termination, and TWS's failure to rehire Mr. Wade.

132.    Accordingly, based on the factual allegations set forth in Count One

(paragraphs 91-112) and incorporated into this Count, the TWS has willfully and intentionally violated the AADEA where it unlawfully terminated Mr. Wade on the basis of his age.

## COUNT IV
### Retaliation Under The Alabama Age Discrimination In Employment Act
### (Ala. Code § 25-1-28 ("AADEA"))

Mr. Wade incorporates by reference the previous paragraphs 1-89 and 112-126 above ve and makes them a part hereof.

133.   At all relevant times, Mr. Wade was a member of a protected class because he was over the age of forty (40) and the events given rise to this action occurred when Mr. Wade was fifty-nine (59).

134.   At all relevant times, TWS knew of Mr. Wade's age and his complaints of age discrimination.

135.   The State of Alabama has a law similar to that of the federal ADEA that makes it unlawful to retaliate against an employee for opposing age discrimination, which protects Mr. Wade's right to oppose such discrimination in the workplace:

> It is an unlawful employment practice for an employer, labor organization, employment agency, or joint labor-management committee to discriminate against an individual because that individual has opposed any practice which is an unlawful employment practice under this article, or because that individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this article.

22

Ala. Code § 25-1-28 (1975).

136.   TWS violated the AADEA when it engaged in the conduct set forth in the Facts and Counts II (paragraphs 20-90 and 91-127) of this Complaint. The relevant numbered paragraphs have been incorporated into this Count of retaliation under Alabama law.

137.   Mr. Wade suffered multiple adverse actions as a result of TWS's retaliation which occurred in close proximity to him  engaging in protected activity.

138.   The adverse actions TWS forced Mr. Wade to endure after engaging in protected activity include but are not limited to the following: TWS required Mr. Wade train his younger replacement; TWS demoted Mr. Wade in terms and conditions of his job duties prior to his termination; TWS subjected Mr. Wade to false scrutiny in close proximity to his termination; TWS terminated Mr. Wade in close proximity to him engaging in protected activity by complaining about TWS's unlawful practices; TWS's failed  to rehire Mr. Wade upon termination; and TWS placed an ad for Mr. Wade's position prior to terminating him; and TWS replaced Mr. Wade's fitter-welder position with a younger, less qualified person.

139.   Therefore, Mr. Wade avers that TWS retaliated in violation of the AADEA.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Wade respectfully prays that this Court assume jurisdiction of this action and after trial:

1.  Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant, including the action taken against Mr. Wade by Defendant, are violative of his rights as secured the ADEA. 29 U.S.C. § 621 et. seq. and the AADEA, Alabama Code §§ 25-1-20, 25-1-28 (1975) et. seq.;

2.  Grant Mr. Wade equitable relief, reinstatement and a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant, and at the Defendant's request, from continuing to violate Mr. Wade's rights, as well as those who are similarly situated pursuant the ADEA. 29 U.S.C. § 621 et. seq. and the AADEA, Alabama Code §§ 25-1-20, 25-1-28 (1975) et. seq.;

3.  Award Mr. Wade the full panoply of relief available under the law, including the award of pecuniary and non-pecuniary compensatory damages including reinstatement, benefits, back pay, front pay, interest, liquidated damages and to him damages necessary for justice and furtherance of the law;

4.  Award Mr. Wade reasonable costs, attorneys' fees and expenses;

5.  Award such to him relief and benefits as the cause of justice may require.

## DEMAND FOR JURY TRIAL

Mr. Wade demands trial by jury on all issues so triable as a matter of right by jury.

24

Dated this the 9th day of July, 2021.

RESPECTFULLY SUBMITTED,

s/ Daniel Patrick Evans
Daniel Patrick Evans
ASB-3209-R67G
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone: (205) 870-1970
Fax: (205) 870-7763
dpevans@evanslawpc.com

Plaintiff's Address:

c/o The Evans Law Firm, P.C.

Defendant's address:

**SERVE DEFENDANT BY CERTIFIED MAIL:**

Tricon Wear Solutions, LLC
Andrew Volkoff, Registered Agent
2700 5th Avenue S.
Irondale, Alabama 35210

25